JESSE MILLARD *vs.* NORTON R. RAMSDELL, and others, and NOR- 2nd Circuit.
TON R. RAMSDELL *vs.* JESSE MILLARD and others.

Millard.
*vs.*
Where the complainant alleged in his bill a right to certain shares of partnership property pur- Ramsdell. &
chased of one of the partners, and the defendant denied his right, and by way of avoidance Ramsdell.
set up an independent contract to show himself entitled to one-half of the shares, the answer Millard.
was *held* as not coming within the rule of being directly responsive to the allegations of the
bill, and that the new contract set out should be proved.

If an agreement to convey real estate be vague and uncertain, or the evidence to establish it is
insufficient, a Court of Equity will not enforce it, but will leave the party to his legal remedy;
and in order to take the case out of the statute of frauds, the acts of part performance must
unequivocally result from the agreement alledged.

Where one of several partners dies and the business of the copartnership is carried on by the
surviving partners without the assent of the representatives, they have as a general rule their
election to demand interest on the amount of the share of the deceased, or take a share of the
profits; but where the interest of the deceased partner had become vested in one of the sur-
viving partners who consented to the continuance of the copartnership, it was held the rule
did not apply.

The original bill in this case was filed in June, 1837, by Salmon
H. Matthews.

In July following, a cross bill was filed by Millard the principal
defendant in the original suit; answers were put in by Matthews
and Millard respectively; as to the others the bills were taken *pro.
confesso.*

Subsequent to the putting in of the answers in both cases, Mat-
thews died, and the suits were revived and continued by and against
his personal representatives, Norton R. Ramsdell and Asa Willi-
ams, administrators, and Arabella Matthews, anministratrix.

Both suits were for the same object.

It appears from the cross bill that in November, 1835, Matthews
and Edwin Bond, one of the defendants entered into a copartnership
with Millard. The articles of copartnership were reduced to writing,
and are as follows:

" This article of agreement made the first day of November, 1835,
" between Jesse Millard, late of Auburn N. Y., and Salmon H. Mat-
" thews and Edwin Bond of Dexter village M. T. Witnesseth,
" that the said parties have this day mutually entered into copartner-
" ship, under the firm of J. Millard & Co., for the purpose of carry-

2nd Circuit.
Millard.
vs
Ramsdell. &
Ramsdell.
vs.
Millard.

"ing on the mercantile business and the grist mill and saw mill busi-
"ness, and all other business which may be, by the said firm, consid-
"ered necessary in connection with said branches, to promote the in-
"terest of said firm, for the term of four years from the above date,
"on the following terms, viz: their capital is to be $21,000 or $7000
"to each person.

"    The said Matthews and Bond now own in the said village of Dex-
"ter, a grist mill and saw mill and a tavern stand, and the necessary
"buildings thereon, containing about five acres of land, more or less,
"according to their deed of said property, executed to them by Sam-
"uel W. Dexter, on the 7th day of April, 1834, which property, to-
"gether with the appurtenances and water privileges thereunto be-
"longing, is estimated at fourteen thousand dollars, which they said
"Matthews and Bond are to furnish as a capital for the benefit of said
"firm, as their shares, and for which, whatever may be due, or to
"become due to said Dexter, they the said Matthews and Bond, are
"themselves, to cause to be punctually paid to the said Dexter, with-
"out cost or inconvenience to the said firm or the said Millard.

"    And the said Millard is to furnish seven thousand dollars worth of
"goods as his share of said capital stock of said firm, and the said
"partners are mutually bound to each other to do and perform all ne-
"cessary services in their power, for the promotion of the above busi-
"ness.    All the loss or gain in said business is to be mutually shared
"by the said partners, and all necessary expenses in said business is
"to be borne by the said firm, from and after the said date first above
"mentioned.

"    And as the said Matthews and Bond are indebted to the said S. W.
"Dexter for the said premises and for the payment of said debts,
"they have executed a bond and mortgage to the said Dexter for the
"payment thereof, and as the said Millard on his part furnishes his
"share of the said capital stock at the commencement of said firm.
"Now therefore it is hereby agreed by the said Matthews and Bond,
"that they will for the purpose of securing said Millard against any
"loss he might sustain by their failing to pay for the said premises
"according to the condition of said bond and mortgage, to execute
"to him the said Millard a warrantee deed of said premises, and they
"the said Matthews and Bond also agree, that in case of their fail-

2nd. Circuit

Millard.

*vs.*

Ramsdell. &
Ramsdell,

*vs.*

Millard,

" ure as aforesaid, to make payment for said premises whereby the
" said Millard's interest shall be injured, that then in such case he
" shall have a claim to secure to himself from any personal property
" in the possession of said firm, or from the property owned by either
" or both of the said Matthews and Bond in their private capacity.
" In witness whereof, the said parties have hereunto set their hands
" and seals at Dexter village, on the date first above mentioned, in
" presence of CHAS. D. MILLARD.

(Signed.)      " J. MILLARD,

S. H. MATTHEWS,

EDWIN BOND."

The cross bill states that Matthews and Bond were at the time of
executing said agreement joint owners of said real estate, and co‑
partners in the grist and saw mill business and tavern, under the firm
and style of Matthews and Bond—that said firm were then indebted
to different persons in a considerable amount ; that by the forma-
tion of said copartnership the firm of Matthews and Bond was dis-
solved.

That Millard did furnish his share of capital according to agree-
ment, and the goods were placed in the store of the firm,

That Matthews and Bond did in pursuance of the agreement on
their part to furnish &c., on the 12th of January, 1836, execute to
Millard a deed of one undivided third of said real estate.

That at the time of the execution of said agreement, said Matthews
and Bond proposed to Millard that he should become joint owner with
them of another parcel of land in Dexter, on which was a dwelling
house and store, &c., (the Brower lot,) that Matthews and Bond
then held a deed of the same, but had not paid the purchase money—
that it was agreed that Millard should own one-third of it and pay
one-third of the said purchase money—that the same was included
in the said deed from Matthews and Bond to Millard—that part of
said purchase money had since been paid out of the partnership
funds—the remainder not yet paid and not all due.

Sets out the covenants in said deed on the part of Matthews and
Bond, *in haec verba.*

COVENANTS.

*First.* Seizin in said Mathews and Bond.

VOL. I.      48

2nd Circuit.

Millard.

Ramsdell &
Ramsdell.
vs.
Millard.

*Second.* Freedom from incumbrances, except a mortgage to Dexter of $10,750.

*Third.* That said Matthews and Bond would pay said mortgage and indemnify Millard against the same.

*Fourth.* Right of said Matthews and Bond to sell.

*Fifth.* Covenant of warranty.

That said deed was intended as an absolute conveyance of said one-third—that said Matthews and Bond have never executed any deed as security to Millard, as against the Dexter claim.

That the partnership commenced immediately on executing the agreement, and that the goods were offered for sale in the store of the firm—that the same had been replenished from time to time, by and on account of the firm—that Matthews and Bond had at all times participated in the profits thereof.

That Matthews and Bond were not acquainted with the mercantile business, and therefore chose to attend to the other branches of the business of the firm, and that Millard should attend principally to the store.

That regular invoices were made of the $7,000 worth of goods and copied into a book in the store—and that similar bills were made of the goods since purchased—and that all of the bills or invoices were kept in the store with the other papers of the firm—that books of account and a cash book, &c., were kept in the store and remained there up to 27th of June—and that Matthews and Bond had access to them at all times—that said invoice book was delivered to Matthews at his request—that Matthews carried it away and still has it.

That in the summer of 1836, an addition was built to said tavern house by the firm and out of their funds, at an expense of about $1,000,—that during the same year a store was in the same way built on said five acres of land, at an expense of about $3,000 ; no account was kept of the expense—that about the 1st of September, 1836, a contract was made by Millard and Matthews in the name of the firm with one J. Ranney to sell him a village lot for a tannery, being part of said five acres—which contract the parties agreed to reduce to writing at some future time—that the same has not yet

2nd Circuit.

Millard.
vs.
Ramsdell.
& Ramsdell.
vs.
Millard.

been done, but that said Ranney has taken possession of the lot by the concurrence of said Matthews and Millard, and paid part of the purchase money for which receipts were given in the name of the firm, and the money appropriated to the use of the firm—charges that all this was done with the consent and approbation of Matthews, and that Bond, during his life time, and Matthews and Millard did agree during his life time to build said addition and said store.

That said firm did about the 12th of January, 1836, purchase of S. W. Dexter certain premises and water privilege, contiguous to the village on Huron river, for $3,000, and took a warrantee deed—that the whole of the purchase money is yet unpaid and not yet due —that at and previous to the commencement of the partnership, Matthews and Bond were negotiating with Dexter for the purchase from him of one-half the unsold lots of Dexter village, and also forty or fifty acres of land north of said village—that it was agreed between Matthews and Bond and Millard, that the latter should be admitted to participate in said purchase—that the same was not consummated during Bond's life time, but that after his death Matthews and Millard completed the purchase in their own names, and a contract for the same was executed by said Dexter, Matthews and Millard, whereby Dexter obligated himself to execute to Millard and Matthews a deed of the same upon the payment of $2,000, that the same is still unpaid—that the said premises have risen in value and are now worth at least $7,000.

That in January, 1836, Millard had occasion to go to the state of New York after his family, and to purchase goods for the firm—that it was agreed between all the parties that he should go, and that the business should be left in charge of Matthews and Bond, and the clerks—that Bond died during Millard's absence, in April or May, 1836—that Millard was on his return when he heard of his death, and immediately returned.

That after Bond's death, Millard and Matthews agreed to continue the business of the partnership under the same style and firm as before, and for their joint benefit—that they did so—that Bond left certain heirs—that soon after his death it was agreed between Matthews and Millard, that Matthews should purchase of the heirs their shares or interest in said concern, and to pay for the same out

2nd Circuit. of Matthews' own funds—that Millard should pay to Matthews one-

Millard. half of the purchase money and expenses—that Matthews should pro-
vs.
Ramsdell. ceed to buy out the same on the best terms he could, in the names
& Ramsdell.
vs. of Matthews and Millard, and for their joint benefit—that Matthews
Millard.
should be allowed to absent himself a sufficient time for that pur-
pose.

That in September or October, 1836, Matthews left Dexter to go to Massachusetts for the purpose of buying out the heirs living there —for their joint benefit.

That Matthews did fraudulently purchase of some of the heirs their interests in his own name and took deeds therefor in his name alone—and that Matthews claims, that by virtue of said deeds he is entitled to six undivided ninths of said real estate—and in right of his wife to a life estate in another ninth—and also claims to be bene-ficially interested in seven-ninths of the personal property of Bond, and that these claims are founded on the following deeds and releases, (setting out abstracts of the deeds by the names of parties, dates, time and place of record :)

List of deeds and releases, from Richard Bond and wife ; from S. W. Dexter and wife ; from J. Carrier and wife ; from Q. Hitchcock and wife ; from A. Williams and wife ; from Hannah Bond.

The names and residence of Bond's heirs are given—that Russel Cooley is guardian of certain minor heirs, (children of Benjamin Wing.)

That Matthews has been appointed administrator of Bond.

That soon after Bond's death, his brother King E. Bond died, leaving his wife and two children heirs—R. Cooley is administra-tor.

That since Matthews' appointment as administrator of Bond, he and Millard have continued the business as before.

That Millard has never drawn from the partnership more than his share of the profits.

That soon after Matthews' return from Massachusetts, Millard learned for the first time that Matthews had taken the deeds in his own name—that Millard trusted to his good faith and was not alarmed, until about February 1837, when in a conversation with Matthews,

Millard learned for the first time that he intended all of said purcha-
ses for his sole benefit.

2nd Circuit.

Millard.
vs
Ramsdell.
& Ramsdell.
vs.
Millard.

That the real estate has risen in value greatly—and was then worth besides the erections recently made $17,000.

That Matthews as part of the consideration of said purchases assumed the debts due from the firm of Matthews and Bond.

The amount of consideration expressed in the several deeds from the heirs is $900—that Millard has offered to pay to Matthews one-half of all the cost of said shares, and demanded a deed of one-half thereof—that Matthews refused to make the deed.

That about the 10th of June, 1837, Millard was taken ill and was confined to his house two weeks—that when he left the store there was a large stock of goods on hand—about $10,000 worth—account books, bills, notes, &c. &c., to the amount of $15,000 or $20,000, and about $2,000 in cash.

That about the 19th of June, 1837, Matthews took from the store $1,000, for the purpose of paying a bank note at Washtenaw bank due from the firm—that Millard learned afterwards that he had not paid the same.

That on Sunday evening June 25, Matthews removed the books and papers from the store, and also the keys to the safe, and on Monday Matthews dismissed the clerk and employed another.

That at this time there was in the store about $1,050 in cash.

That during Millard's illness, Matthews took and appropriated to his own use large sums of money.

That on the 28th of June, Millard called at the store and was denied access to the books by Matthews, and prevented by force from making any examination.

That there is no person in the store or mills to look after the interests of Millard—that Millard is unable to attend to the same in person—that Matthews refuses to permit any one, &c.—that the cash receipts in the store are about eighty dollars per day, and that on the evening of June 27th, there was in the store $800 in cash.

That Matthews is illiterate and incompetent to carry on the business of the firm.

2nd Circuit.

Millard.
vs.
Ramsdell.
& Ramsdell.
vs.
Millard.

Charges Matthews with combining and confederating with S. W. Dexter and Millicent his wife, Richard Bond and Mary his wife, Joseph Carrier and Polixiana his wife, Quartus Hitchcock and Ardelia his wife, Asa Williams and Hannah his wife, Hannah Bond, and Arabella Matthews, wife of said Matthews, who each claim as heirs at law of said Bond, &c., and with divers others, &c.

That Matthews filed a bill, &c., its prayer, &c.

Requires the defendants to make answer without oath—to the premises.

Prays for an account, that Millard may be decreed entitled to one-half of the profits since Bond's death—for the establishment of said deed from Matthews and Bond to complainant as an absolute conveyance—that Matthews be decreed to convey to complainant one-half of the real estate purchased of Bond's heirs—for a partition of the real estate or sale—for a dissolution of partnership—and for the appointment of a receiver—for an injunction upon Matthews.

Abstract of answer of S. H. Matthews.

The answer of Matthews admits the copartnership, but insists that the articles were entirely drawn up by complainant in an artful manner, and designed to enable him to take advantage of defendant, &c.

Admits that previous to and at the time of executing said articles, the defendant and Edwin Bond were joint owners of the five acres of land in bill mentioned, and were copartners in grist and saw mill and tavern stand under the firm of Matthews and Bond, and that the firm were then indebted as in the bill mentioned, and that by the formation of said firm of J. Millard & Co., the firm of Matthews and Bond was dissolved.

Denies that complainant ever furnished as his share of the capital stock $7,000 worth of merchants' goods, admits that complainant did shortly after the execution of said articles, furnish and place in the store of the firm a stock of goods not exceeding as defendant verily believes $4,000 or $5,000 worth, and by far the greater proportion thereof were remnants and other refuse goods of an old stock unsuitable to the demand and different in nature, quality and value from what the complainant had promised to put into the partnership,

and such as did not according to their agreement entitle him to one-third of the rents of the mills and tavern, the said agreement in fact imposing on complainant an obligation to furnish a substantial and fresh stock of goods suitable to the wants of the country, and worth at first cost prices and transportation $7,000.

2nd Circuit.

Millard.
vs.
Ramsdell,
& Ramsdell.
vs.
Millard.

Admits that after the execution of the articles, and in pursuance of the agreement therein, defendant and wife and Edwin Bond executed a deed in fee simple of one-third of the five acres as in the bill stated, but says that the deed though absolute in terms, was not intended to be so in fact, but only to operate as a security to indemnify complainant against the claim of S. W. Dexter in the articles mentioned; and to a participation of one-third of the rents and profits of said property for four years, and complainant acquired an estate therein only for the aforesaid purposes upon the express condition that money to pay Dexter should be drawn from the partnership funds, and on the faith that complainant would fully comply with his aforesaid contract by delivery of the stipulated stock of goods, &c., and the property was estimated at a price below its real value, on the further faith that the goods would be of the quality and prices before mentioned; and states that the deed was drawn by complainant, does not recollect what the covenants were.

Admits that at the execution of the copartnership articles, defendant and Bond proposed to complainant to become jointly interested with them in the Brower lot—that defendant and Bond then held a deed therefor as in bill stated, and subject to the payments therein mentioned, for which three weeks notice were given. That complainant at the time mentioned in bill, concluded to purchase and pay as therein stated, and that the first of said notes has been paid, the others are unpaid, and only one due.

That defendant cannot state positively what covenants are contained in the deed, but believes they are as set forth in the bill, that the deed is recorded. Denies that the deed was intended to be absolute, but avers that it was as security as aforesaid, and denies that defendant and Bond or either of them have executed to complainant a warrantee deed of the premises mentioned in copartnership articles except as security. Avers that there never was any conversa-

2nd Circuit.

Millard.
vs.
Ramsdell.
& Ramsdell.
vs.
Millard.

tion between the parties by which complainant was entitled to any other deed than the one he received, nor was there ever any complaint by complainant that he had not received all and every deed he was entitled to.

That complainant has in fact received the deed mentioned in the articles of agreement and none other, and for the sole purpose therein mentioned, and he never demanded any other.

That the copartnership of J. Millard & Co., commenced immediately on the execution of the articles of agreement, and goods of said firm were sold at their store and replenished from time to time from different places, but to what extent defendant cannot state; that defendant has received or expects to receive his own share of the profits, and also seven-ninths of those due to Bond at his death to which he is entitled in virtue of the several assignments, as also two-ninths more which he has this day purchased, being all of said Bond's interest, but denies that complainant put in $7,000 worth of goods, or that defendant has shared in the profits of such an amount.

Admits that defendant and Bond were unacquainted with mercantile business, and that he chose to attend to the other branches of the business, and that complainant should give his attention to the store, intending thereby that such attention should be proper, &c., and that complainant would be responsible for such attention, but defendant avers that the store has been very inadequately and improperly attended by complainant and sons, with complainants' knowledge and consent, and to the detriment of the concern.

Denies that regular and correct bills or invoices were made of the $7000 worth of goods, so said to be furnished by complainant, and were copied into a book in the store. Denies that the stock was at all furnished. Defendant says he never knew until the time after mentioned, that any invoice or bill of any kind had been made by complainant of the goods which he did furnish. Says that no bills of the goods so furnished were ever made out by the persons who sold the same to complainant, as defendant verily believes, and if they were made out they were never shewn to, or seen by defendant, and defendant does not believe and avers that there never was a just and true invoice made out by complainant, or on his behalf of said goods.

2nd Circuit.

Millard.
vs.
Ramsdell.
Ramsdell.
vs.
Millard.

But defendant admits that about the sixteenth of June last, complainant showed defendant a small book purporting to be an inventory of goods made out at Auburn, New York, which was made out chiefly in gross sums, omitting the details necessary to render it satisfactory, and to test its correctness, that the entire was made out by complainant without reference to original bills, but with a view to establish a particular result and afforded no evidence of the actual amount, that this was all the invoice ever shewn to defendant, and he believes the same was not completed until long after the commencement of the copartnership, that the defendant retained same in his possession a few days, when he returned it to complainant, or into his possession at the store, about the twentieth June last, and defendant believes the same is now in the store or in complainant's possession. Defendant believes that bills were made of the goods since purchased at New York, and elsewhere, and that all of said bills have been kept with the other papers of the firm in the store.

Denies that regular books of account of all sales or credit made at said store were kept, or that any of the other books mentioned in bill were regularly kept, but admits that books purporting to be those in the bill mentioned, and for the time therein stated were kept not in a regular business like manner, but very irregularly, defendant believing that not more than one-tenth of the several accounts purported to be kept thereby were in fact entered on said books.

Admits that all the books were kept in the store, and were open to inspection of defendant and Bond with exception of said invoice book, which was, at defendant's request, delivered to him for the purpose in the bill alleged, and was returned by defendant.

Denies that the defendant or Bond had the control of any of the books, although they were open to their inspection; they remained in the exclusive possession and under the exclusive control of complainant, or his sons, who acted as clerks in the store, and although they were nominally clerks of the company, yet they in reality consulted their father's interest in all cases when that was at variance with the interest of the other partners.

Admits the building of the addition to tavern, and the store, both after Bond's death, at the time and expense stated in the bill.

Admits the contract of sale of a village lot to Julius Ranney as in

2nd Circuit.
Millard.
vs.
Ramsdell.
Ramsdell.
vs.
Millard.

bill stated, says that complainant's participation in said transaction arose not from his right as a proprietor in the lot, but from his interest as a partner, and of the firm having a temporary and qualified interest as before stated, which rendered his assent necessary.

Admits that said lot was taken possession of, and part of the purchase money paid, receipted and appropriated as in the bill stated, but that defendant consented to such appropriation not from any right of the firm thereto, but because same was small in amount ; that at the time of the contract defendant told Ranney that the company could not give a deed, but that at some future time defendant individually would see that he received a deed.

Admits that the addition to tavern and store were built and paid for, and said lot sold and receipts for purchase money given in all particulars as stated in the bill, and that the parties therein mentioned did agree to erect said buildings.

Admits the purchase from Dexter as in the bill stated, that the deed is in defendant's possession; the purchase money yet unpaid, and no part due at time of filing the bill, but defendant believes one payment has since become due.

Admits that at and previous to the commencement of partnership, defendant and Bond were in negotiation for the purchase of village property of Dexter as in bill set forth, and the agreement between complainant, defendant and Bond, as in the bill stated, and that the purchase was not consummated during Bond's life time, and states it never was consummated, but the agreement then made fell through, and a new bargain was made therefor after Bond's death.   That the premises were purchased by complainant and defendant, not in their copartnership character, but as individuals, admits that complainant and defendant did complete the purchase as stated in the bill, and that the contract was then in defendant's possession.   Admits that the premises have risen in value ; cannot say whether they are worth at least $7,000, but believes they are worth $5,000.

Admits that complainant had, as he alleged, occasion to go to the state of New York at the time, and for the purposes mentioned in bill, and that defendant made no objection thereto, though he conceived complainant's going to be in violation of their copartnership articles, defendant regarded his departure as being caused in reality by the ne

2nd Circuit.

Mill ird.
vs.
Ramsdell.
Ramsdell.
vs.
Millard.

cessity of moving his family, and that the purchase of goods was only a pretext; that if such purchase was really necessary it was in consequence of complainant having failed to furnish his $7,000 worth of goods. That though there was no express agreement, as mentioned in the bill, in regard to conducting the business during complainant's absence; yet it was generally understood as unavoidably resulting from such absence that the store should be left in charge of the defendant, and Bond and the clerks; and that defendant and Bond should take charge of the other branches of the business, and that complainant should be permitted to take the journey.

Admits that Bond died at the time mentioned in the bill. Defendant does not know whether complainant was on his return when he heard thereof, but admits that he did return soon after.

Admits that after Bond's death, defendant was under the impression from the representation of others that he was bound to continue the partnership to the end of the four years, and under that impression he did continue the business, with complainant, without any new agreement, for their joint benefit and under the same firm as before, and the business was continued and carried on as before. Denies that it was under any new agreement independent of the original articles.

Admits that Bond left heirs. Denies wholly any agreement or conversation in reference to the purchase of their rights for the joint benefit of complainant and defendant. That defendant has, since Bond's death, purchased of the heirs, and become entitled to the whole of Bond's interest, and that the same was purchased for his sole benefit.

Admits defendant's leaving Dexter at the time, and for the purpose in the bill mentioned, and that he procured from Bond's heirs, deeds and releases, to be executed to him in his own name, and that he claims as in the bill mentioned. Denies that his so doing was in violation of agreement, or with intent to deceive or defraud complainant.

Admits that defendant derives his said claims under, and by virtue of the several deeds in the bill set forth.

Admits that Bond's heirs are correctly set forth in bill, and that defendant is Administrator of said Bond, and that King E. Bond died intestate, leaving the persons named in the bill his heirs.

2nd Circuit.

Millard.
*vs.*
Ramsdell.
& Ramsdell.
*vs.*
Millard.

Admits that ever since defendant's appointment as Administrator of Bond, he has continued the business with complainant ; but defendant did so in his individual, and not in his official capacity, as Administrator.

Defendant believes complainant has drawn more than his share of profits, and therefore denies that complainant has never drawn more than his share.

Defendant cannot form any belief whether or not, soon after his return from Massachusetts, complainant learned for the first time that defendant had taken deeds in his own name, nor whether he relied on the good faith of defendant, and was not alarmed &c., nor whether, until the conversation in the bill mentioned, complainant learned that defendant intended all of said purchases for his own benefit.

Defendant believes that complainant never entertained the least idea that any of said shares were purchased for his benefit.

Admits that since November, 1836, the real estate mentioned in the deed from defendant and wife and Bond to complainant has risen in value, independent of the erections thereon. Defendant cannot say how much or whether they are worth the sum mentioned in the bill.

Denies that defendant ever told complainant that, on the purchase of the rights of Bond's heirs, he assumed as part of the consideration of the purchases the payment of the debts due from the firm of Millard & Bond, and that the consideration expressed in the deeds, was the amount actually paid over and above the debts, that such was not the fact, but defendant admits that he may have told complainant that as part of the consideration he was to assume the debts, but the amount of consideration expressed in the deeds was inserted in a round sum, without regard to the sum actually paid, which in some instances exceeded the amount stated.

Admits that the whole amount of consideration expressed in said deeds is two hundred and fifty dollars. But for the reasons before stated, defendant wholly denies and repudiates the pretended claims of complainant, to any participation in the property acquired by said purchasers, and denies that complainant, by virtue of any agreement with defendant, and of any right as surviving partner, and by paying to defendant the half of the sums in the bill mentioned, or other-

2nd Circuit.

Millard
vs.
Ramsdell.
& Ramsdell.
vs.
Millard.

wise would be entitled to half of said property, or any part thereof.

Denies that any tender was ever made as stated in the bill, but admits that, at or about the time stated in the bill, complainant did make the demand stated in the bill relative to said property, and that defendant refused.

Admits the illness of complainant, as stated in the bill, and that the store was left in care of his two sons, and there was in the store a large stock of goods. Does not know the amount, or of what they consisted. Also, books of account, notes, &c., &c., together with a certain sum of money. Defendant cannot set forth the particulars, or amount ; all such matters remained under the control and management of complainant, as well during his temporary illness as before.

Admits that defendant did take the sum of one thousand dollars as stated in the bill, and for the purpose therein mentioned, and which was not a mere pretence, that he did actually pay the bank note therewith.

Admits that defendant did enter the store in the absence of complainant, and the clerks as stated in the bill, and put into an iron safe, therein the books, notes, &c., and removed the key of the safe in which the money was kept, but all this was done in pursuance of the consequences of the writ of injunction, &c, and in accordance with the prayer of a bill which defendant was coerced to file by the conduct of said complainant, &c., and because defendant apprehended if he had notice of the issuing of the writ, he would seize upon the portable and valuable property of the firm, &c., defendant, in order to protect them locked them up, and after service of writ, removed the same to his house, the complainant having obtained a key of the safe, and dismissed complainant's sons, as stated in the bill, because he had not confidence in them, and placed in said store a competent and trusty clerk, and assumed the entire control and management of the business. Defendant submits that he was justified &c., and exercised only his legitimate power.

Admits that at that time defendant received from the safe in said store, about sixteen hundred dollars.

Admits that during complainant's illness defendant took and ap-

2nd Circuit.

Millard.
vs.
Ramsdell.
& Ramsdell.
vs.
Millard.

propriated to his own use various sums of money as he was justified in doing by virtue of his rights as a partner and by virtue of articles relative to the purchase of the Brower lot ; all of which were entered upon the books, avers that the whole did not exceed the proportion of defendant.

Admits that on the twenty-eighth of June defendant being in possession of the store, complainant did call at the store and requested, as stated in the bill, and that defendant did refuse said requests, which he was induced to do because he wished to make an inventory thereof, previous to the access of complainant thereto, whom he suspected of a design to alter the same and make entries thereon, which entries complainant did afterwards make as hereinafter stated, and defendant did not think complainant was entitled to have access to the books until they were in the hands of a Receiver, and defendant removed them to his own house until a Receiver was appointed, and then delivered them to him.

Denies that there was no person in the employment of the firm to take care of the interests of complainant, that defendant employed a trusty and competent clerk to act for the entire concern, and gave his own time and attention to the business, but defendant did, as stated in the bill refuse to permit any person appointed by complainant to attend, &c.

Admits the receipt of money and the state of funds as stated in the bill.

Admits that defendant, though not an illiterate man, is unacquainted with the mercantile business.

Denies that complainant has any well grounded apprehensions of being defrauded by defendant.

Admits that no account was ever settled between them. Defendant avers that complainant has, during the partnership applied to his own use sums of money, and exceeding his proportion, to an amount unknown to defendant, and that he permitted his sons, being minors, and irresponsible to take out of store goods, and charged them to their account, and also that complainant furnished articles for the use of the concern and charged more than they were worth.

Insists and avers that the partnership was dissolved by Bond's death,

.and all of complainant's right to a share of the profits of mills &c., became extinct.

Admits that complainant, although not entitled to any participation in the fee of said real estate, is entitled to an account of the proportion of his funds, if any drawn from said concern, for improvements of said estate ; but defendant says that said sums should have been charged to him and Bond, and if not already charged, should now be so charged, &c.

Admits the institution of proceedings in this court, as in the bill, and that a Receiver has been appointed, to whom defendant gave up the premises, books, money, &c., and the Receiver now conducts entire business.

That complainant having expressed anxiety to help the Receiver and been permitted to have access to the books, took advantage thereof to make some entries thereon, materially affecting the nature and statement of some of the accounts, and did the same in a clandestine illegal manner. Defendant does not know the nature or amount thereof.

That the bill is irregular, informal without equity, and deficient as to parties.

Defendant prays to be allowed the benefit of these and all other objections on the hearing of the cause, and on all other occasions, as fully as if the same had been made the subject of special demurrer, or plea. Prays the dismissal of complainants bill and the relief prayed by the defendant's original bill.

General replication filed.

MILES & MILLARD, for complainant.

KINGSLEY, FRASER & ROMEYN, for defendant.

THE CHANCELLOR.—It is not necessary in this stage of these causes to enter at length into a detailed statement of the pleadings, and the very voluminous proofs, and exhibits which the cases present.

The first question presented, which it is necessary to decide before the accounts are stated, is, did Millard comply with the conditions of the articles of copartnership by furnishing goods to the amount of $7000, and thus entitle himself to the one third of the real estate and to an equal share of one third in the effects and profits of the copart-

*2nd Circuit.*

*Millard.*
*vs.*
*Ramsdell.*
*Ramsdell.*
*vs.*
*Millard.*

2nd Circuit.
Millard.
*vs.*
Ramsdell.
& Ramsdell.
*vs.*
Millard.

nership. An inventory is exhibited, by which it appears that the cost of the goods furnished by him was $5,389 54 exclusive of the cost of transportation, insurance, &c., and that a general charge was added of thirty-three and one-third per centum for freight, purchase of goods, insurance, &c., making $1,796 51, which two sums, make in all $7,186 05.

It appears by the proofs in the cause that from eight to ten per ct. should cover these charges.

It becomes necessary to determine the question whether the goods thus furnished were accepted and received by Matthews and Bond as a fulfilment of this part of the agreement on the part of Millard. It may be proper to say from my view of the terms of the contract that if Matthews and Bond had dissented at the time the goods were furnished, and refused to proceed further until the question of the amount to be charged for purchasing the goods, freight, &c., had been settled and the deficit supplied, they would have been entitled to have the amount of goods stipulated for, at cost and reasonable charges and expenses without any addition by way of profit.

But from the testimony of King and C. D. Millard, confirmed to some extent by that of John Williams there are strong grounds of probability that the exhibit containing an inventory of goods, and in which this charge of $1796 51 occurs, was the one used at the time the goods were received at Dexter.

The testimony of Cyrus Loomis of the admission of Matthews, that Millard had fulfilled on his part, confirmed as it is by the prominent fact that the deed of the one third, part of the property was executed by both Matthews and Bond some time after the goods were received, without any further stipulation or reservation, altogether furnish a very strong presumption that the parties themselves regarded this part of the contract as fulfilled and settled. Whatever may have been the fact, in a doubtful question of this kind, it is much the most safe to abide by the unequivocal acts of the parties themselves, than at this late period to attempt to open this matter.

That the parties executed and delivered the deed, admits of no doubt.

As to the alleged agreement for the purchase of the interests of the heirs of Bond.

It is urged that this agreement is made out by the answer of Millard, and that it is taken out of the statute of frauds by part performance. Millard, the defendant in the first suit, and complainant in the other, insists in his answer in the one case, and in his bill in the other, that it was agreed between himself and Matthews after the death of Bond, that the interests of the heirs of Bond should be purchased by Matthews for the benefit of both. This is denied in the most positive terms by the answer of Matthews, in the second suit. It was insisted at the argument that Millard's answer being responsive to the bill and not disproved, must be taken as true. Matthews alleges in his bill his right to certain shares purchased of the heirs of Bond. This Millard denies, and by way of avoidance, sets up this independent contract by way of showing himself entitled to the one half of these shares. This, I am inclined to regard as not coming within the rule of being directly responsive to the allegations of the bill. It sets out a new contract, and should be proved. The testimony of the witnesses is not positive and conclusive. They do not testify as to the terms used by the parties in making the contract.

O. D. Millard says in general terms that it was agreed that the interests should be purchased for the benefit of both, as he *understood* it : giving the understanding of the witness and not the words used by the parties.

The testimony of B. King, as to the purchase, is still less explicit.

It seems strange that a transaction of this importance should have taken place without a written contract, or at least a verbal one more clear and explicit. It has rather the appearance of a conversation in relation to a contract, than a clear definite and complete agreement.

No entry on the subject is made on the books. The money is paid entirely by Matthews ; no charge is made to Millard or to the firm ; and the title is taken to Matthews individually.

The claim as alleged is for an interest in the entire shares purchased of the heirs of Bond. The testimony relates only to the shares of the heirs residing in Massachusetts, while several others were resident in the immediate vicinity of Dexter. It will be perceived that

2nd Circuit.

Millard.
*vs.*
Ramsdell. &
Ramsdell.
*vs.*
Millard.

2nd Circuit.

Millard.
vs.
Ramsdell. &
Ramsdell.
vs.
Millard.

the contract is not proved in that clear, full and precise manner, which has uniformly been required as the first step toward the establishment of a parol contract for the conveyance of lands.

If the contract be vague and uncertain, or the evidence to establish it insufficient, a Court of Equity will not enforce it, but will leave the party to his legal remedy. *Colson* vs. *Thompson* 2 *Wheat. R.* 336 *( S. C.* 4 *Pet Cond.R.*143.) It was however insisted that there had been such unequivocal acts of part performance as would confirm the existence of the contract and take it out of the operation of the statute.

These acts consist principally in certain improvements upon the property after the death of Bond, by the surviving partners and without keeping an account of their expenditures. The rule is that the act of part performance must unequivocally result from the agreement alleged. *See Burtch* vs. *Hogge ante* 31 *and n* 1, 2; *Bomier* vs. *Caldwell ante* 67; *McMurtrie* vs. *Bennett* 124. It may have been so in this case ; but this is not one of those cases where the acts must necessarily have resulted from this agreement, and are inconsistent with any other.

It will be perceived that from the view I have taken of this portion of the cause, this is not a case of a parol contract clearly proved and partly performed, which calls upon this court to decree a specific performance. It is not clearly and distinctly proved. It is positively denied by Matthews. The money was all paid by him and no charge made, either to Millard or to the firm. The title deeds were all taken in his name, and it at least presents such a case of doubt as admonishes this court of the danger of interfering to decree the performance of a contract which may never have had an existence.

Matthews, although he denies any new agreement, says he believed at the time he was bound to continue the partnership. It is not going too far I think, to regard this to have been the understanding of the parties as the interests were subsequently vested in Matthews, to accord to them an equal interest in the profits after the death of Bond.

Hence it will result that in taking the accounts Millard must be regarded as having fulfilled on his part the original agreement, and to be entitled to one third of the real estate, and to one third of the profits of the copartnership to the death of Bond, and that the accounts

be stated to that period. That thereafter the survivors Millard and Matthews share and share alike in the profits. That the legal representatives of Bond be credited with interest upon their share of the capital, and a reasonable rent for their proportion of the real estate from that period to be ascertained by the master. And as it appears that the repairs and improvements made to the real estate, were necessary and useful, and were made with the concurrence of Matthews, in whose estate these shares are now vested that the representatives of Bond are to be charged in the account with one third of their cost, and that further directions be reserved until the coming in of the report.

July 11, 1840 a rehearing was granted upon petition filed for that purpose, and an order granted staying all proceedings until the rehearing should be had. The following is the opinion of the Chancellor on the rehearing :

THE CHANCELLOR.—Most of the questions raised upon the re-hearing of this cause were considered and disposed of when the case was before the court upon the first hearing. It is not necessary therefore to again go through the details of this complicated case. Upon a review, I must confess I have had more hesitation and doubt upon the question as to whether Matthews ought not to be held and considered as having purchased the interest of the deceased partner for the benefit of the firm, and an equal division made, both of the property and profits, after the re-payment of the money paid by him for the purchase of this interest.

But as there is no reasonable doubt from the entire case that the purchase money was paid by Matthews, no charge or memorandum made on that account in the books, and no written contract or memorandum between the parties; it is perhaps, if there be an error, erring on the side of safety to adhere to the views there expressed upon this point, although it is with some doubt and hesitation. But the point made upon the rehearing, and to which the petitioners must be confined, is, that the representatives of the heirs of Bond are entitled to their election, to take either interest or profits upon that share. It was held upon the former occasion as well from the pleadings and proofs as from the whole course of the business of this firm, that it was understood and agreed, on the part of Matthews that this part-

nership should be continued, and that each party were entitled to share alike after the death of Bond.

The interest of Bond being vested in Matthews, to give him or his representatives this option now would be contrary to what, from the entire case, must be inferred, was the contract and understanding of these partners, inequitable and unjust.

Of the general rule that the representatives of a deceased partner have this election, when the partnership is continued without their assent, there is no doubt.

But here this interest is vested in one of the partners who has consented to the continuance of this copartnership ; the reason of the rule ceases, and he cannot be permitted to share in a manner different from, and in violation of the manifest understanding of the parties.

Although not embraced in the petition for a rehearing, it is urged that rent, instead of interest, should be charged upon the share in the mills, and real estate originally belonging to Bond. Such was my first impression.

The whole matter of the negotiation after the death of Bond, is left very obscure ; no terms or conditions satisfactorily established in the pleadings or proofs. The master, in fixing upon a reasonable rent, must, in fact resort to the profits made by the mills which formed the principal business of this copartnership, and it will, in fact, by changing the decree in this respect be but allowing profits by another name, which the case made, will neither call for nor justify.

There is much that is obscure in this case, but upon the whole I think that the equity of the case does not call for or justify the relief sought for by the petition for a rehearing.

Motion denied, and the order for a stay of proceedings vacated.